# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

JAMIE ELAINE HOLLADAY,

               Plaintiff,

      v.

FAIRBANKS NORTH STAR BOROUGH
SCHOOL DISTRICT,

               Defendant.

Case No. 4:15-cv-00011-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT

Before the Court at Docket 31 is Defendant's Motion for Summary Judgment. The motion is fully briefed.[1] Oral argument was not requested and was not necessary to the Court's decision.

### BACKGROUND[2]

Plaintiff Jamie Elaine Holladay brought this action alleging employment discrimination on the grounds of age and disability, interference with her right to seek medical leave, defamation, and contractual grievances. Ms. Holladay began working for

---

[1] *See* Docket 40 (Opp.); Docket 43 (Reply).

[2] The Court views the evidence in the light most favorable to Ms. Holladay for this summary judgment motion as she is the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). These facts are drawn not only from the documents submitted by Defendant in support of its summary judgment motion, *see* Docket 32 (Partnow Decl.), but also from the sworn Complaint, Docket 1 at 8 (declaration under penalty of perjury), and the documents there-attached. The Court also credits as evidence the factual statements in Ms. Holladay's Opposition to Defendant's Motion for Summary Judgment, as that document also includes a sworn oath. *See* Docket 40 at 13. In its reply, Defendant objected to some of this evidence as inadmissible hearsay, *see* Docket 43 (Reply) at 2, but to the extent the comments were allegedly made by Defendant's employees in the course of their employment they would be admissible under Federal Rule of Evidence 801(d)(2)(D).

Defendant—the Fairbanks North Star Borough School District (the District)—in 2010, as an aide in the Autism Outreach (AO) program.[3] As an employee of the District, Ms. Holladay was a member of the Education Support Staff Association (ESSA), which had negotiated a collective bargaining agreement (CBA) with the District.[4]

From September 2011 through April 2013, Ms. Holladay alleges that she was given less desirable work assignments, was more closely supervised than her coworkers, and was treated differently from coworkers during office training sessions.[5] She adds that she was criticized for inappropriate work attire, was given "glares, blank stares, and downgrading looks" from supervisors, was spoken to in a "demeaning tone," and "was treated as if nothing she said or did was correct."[6] During this period, Ms. Holladay received two "negative evaluations," one in March 2012 and the other in April 2012.[7] Susan Nugent (a contractor hired by the District to assist in running the AO program) allegedly made negative comments about Ms. Holladay during meetings to discuss these evaluations.[8]

---

[3] *See* Docket 32-2 (Position Authorization Form).

[4] *See* Docket 32-1 (Holladay Dep.) at 10, 40:3–8; *see also* Docket 32-3 (CBA).

[5] *See, e.g.*, Docket 32-21 (Pl.'s Resp. to Def.'s First Disc. Requests) at 2 (describing some early incidents of what Ms. Holladay perceived as disparate treatment); Docket 1 at 4–6 (detailing later treatment).

[6] Docket 11-1 at 4 (Halverson Decl.).

[7] *See* Docket 1 at 4–6; Docket 11-1 at 20–37 (Evaluation Paperwork); Docket 32-1 at 16–17, 80:7–81:25.

[8] *See, e.g.*, Docket 1 at 2, ¶ 3.c.xii; Docket 32-21 at 5–6. Ms. Holladay's focus seems to be on Ms. Nugent's alleged assertion that Ms. Holladay had exhibited "stalking behaviors." *See* Docket 32-1 at 6, 8. One or two other individuals were also present at these meetings. *See* Docket 32-1 at 16, 80:7–9; 18, 82:9–10.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 2 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 2 of 30

In 2012 the District restructured by terminating the AO program and starting up a new program in its place, the Autism Behavior and Educational Liaison (ABEL) program.[9] In July 2012, as a result of this restructuring, Ms. Holladay and all of the other workers in the AO program were laid off.[10]  In August 2012, Ms. Holladay applied for but was not hired to a similar position in the restructured ABEL program.[11]  Ms. Holladay contends that the hiring decisions for ABEL were based on age, and that she was not hired because she was over 50 years old.  Ms. Holladay then complained of her treatment to school officials, who found "no wrongdoing."[12]  In December 2012, while her administrative complaint was still being evaluated by the District, Ms. Holladay was rehired to fill a different position at a different school.[13]  Ms. Holladay received a third negative evaluation in "[l]ate April 2013."[14]

During the summer of 2013, Ms. Holladay was notified that she would be transferred to a different school in the District.[15]  At the beginning of August 2013, the

---

[9] *See* Docket 32-1 (Holladay Dep.) at 8, 25:4–12; Docket 1 at 5.

[10] Docket 1 at 5; Docket 32-5 (July 19, 2012 "Notification of Layoff").

[11] Docket 1 at 5 ("I was not hired."); Docket 32-13 (Employment Records) at 8.

[12] Docket 1 at 5; Docket 1-2 (various "grievances").  Ms. Holladay also expresses some frustration with her union or its representatives.  While that information is essential for understanding the context of and reasons for Ms. Holladay's actions, neither the union itself nor any of its employees is a party to this case.

[13] *See* Docket 32-6 (Dec. 19, 2012 "Notice of Recall").

[14] Docket 1 at 6.  Although Ms. Holladay disputes the merit of that evaluation, she does not assert that there was anything defamatory in either the evaluation or any meeting related to that evaluation.  *See* Docket 32-21 at 5–6.

[15] Docket 32-7 (July 12, 2013 "Assignment for the 2013-2014 School Year").

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 3 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 3 of 30

District offered a week-long training program; Ms. Holladay did not receive notice of this training and did not attend.[16]  On August 22, 2013, shortly after having commenced work for that school year, Ms. Holladay met with her new school's principal to discuss her employee improvement plan.  In this meeting Ms. Holladay became, in her own words, "exasperated and addled" as she explained her past history with Ms. Nugent related to the negative evaluations.  At Ms. Holladay's request, she was excused from work for the remainder of that day.[17]

The next day Ms. Holladay was called to a meeting with Traci Gatewood, another school administrator, who apparently was concerned about Ms. Holladay's mental health and how it might impact her interaction with students.[18]  Ms. Holladay did not return to work at the District after the August 23 meeting.[19]  She asked to take leave under the Family and Medical Leave Act[20] (FMLA) and sought accommodations for her disability pursuant to the ADA; these requests were not immediately granted.[21]  Although Ms. Holladay did not return to work after August 23, the record does not reveal whether she

---

[16] *See* Docket 1-2 at 15 (Oct. 25, 2013 email from Jamie Holladay to Sandra Kowalski).

[17] *See* Docket 40 (Sworn Opp. to Def.'s Mot for Summ. J.) at 10.

[18] Docket 32-8 (Sept. 3, 2013 letter from Traci V. Gatewood to Jamie Holladay); Docket 40 at 11; Docket 1 at 7; Docket 1-2 at 13 (Aug. 28, 2013 email from Jamie Holladay to Sandra Kowalski).

[19] *See* Docket 40 at 9; *see also* Docket 1 at 7.

[20] 29 U.S.C. § 2601 *et seq.*

[21] *See* Docket 1-2 at 19–23 (Oct. 25, 2013 letter from Jamie Holladay to Sandra Kowalski); Docket 1 at 7.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 4 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 4 of 30

was in a paid or unpaid status. In October 2013, Ms. Holladay's doctor indicated that she could return to work under certain conditions.[22]

On November 4, 2013, Ms. Holladay met with District personnel. During the course of that meeting, she was terminated from her position. According to Ms. Holladay's unrebutted evidence, she "was told [she] was terminated because of the accommodations."[23] In a letter to Ms. Holladay from Ms. Gatewood documenting that November 4 meeting, Ms. Gatewood explained that "all parties agreed that no reasonable accommodation could be made to continue [Ms. Holladay's] employment" in her assigned position.[24] At that meeting, Ms. Holladay was offered an opportunity to accept a job in either a janitorial or part-time clerical position.[25] Ms. Holladay rejected that offer on November 8, 2013 and resigned from the District because she "considered the work environment so hostile" that she could not "accept[]" any offer.[26]

On August 29, 2014—294 days after she rejected the alternative job offers and 298 days after she had been terminated—Ms. Holladay faxed a letter to the EEOC describing these events.[27] On or about November 28, 2014, Ms. Holladay added charges

---

[22] *See* Docket 32-18 (Oct. 18, 2013 letter from Mikki King Barker to Traci Gatewood). Among those conditions were that Ms. Holladay not work more than 20 hours per week for the next 60 days and that she "not work with profane or deliberately disruptive students or staff or faculty."

[23] Docket 1 at 7.

[24] Docket 32-19 at 1 (Nov. 6, 2013 letter from Trace Gatewood to Jamie Holladay).

[25] Docket 40 at 11–12; *see also* Docket 32-19 at 1.

[26] Docket 40 at 12; Docket 1 at 7.

[27] *See* Docket 11-1 at 7 (Aug. 29, 2014 letter from Jamie Holladay to EEOC). The fax cover sheet was apparently transmitted on September 4, 2017. *See* Docket 11-1 at 11. But the fax header on the actual letter sent to the EEOC indicates it was originally transmitted on August

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 5 of 30

of unlawful retaliation.[28]  The EEOC dismissed Ms. Holladay's complaints and issued a right to sue letter on February 3, 2015.[29]  Ms. Holladay filed this suit on May 7, 2015, seeking injunctive relief and damages.[30]

## DISCUSSION

### I.  Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.  The Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

### II.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[31]  If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[32]  The non-moving party may not

---

29, 2014.  *See* Docket 11-1 at 7–10.

[28] *See* Docket 32-10 (Notification of Charge).

[29] Docket 1-1.

[30] Docket 1 at 8.  Ms. Holladay seeks an order requiring the District to remove "the retaliatory and negative evaluations and unwarranted Improvement Plans" from her personnel file and various types of damages, including incurred medical expenses, lost wages, and lost employment benefits such as a pension and health insurance.  *Id.*

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 6 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 6 of 30

rely on mere allegations or denials.[33]  Rather, that party must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[34]

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[35]  To reach the level of a genuine dispute, the evidence must be such "that a reasonable [factfinder] could return a verdict for the non-moving party."[36] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[37]

## III.    Analysis

Ms. Holladay's claims fall into four categories.  First, she presents employment-related discrimination claims—her claims of retaliation, age discrimination, and disability discrimination fall into this category.  Second, she alleges a claim of defamation under Alaska law.  Third, she claims she was improperly denied benefits under the FMLA.  And fourth, she asserts contract claims based on her employment agreement with the District. The Court will address each category in turn.

---

[33] *Id.* at 248–49.

[34] *Id.* (citing *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[35] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[36] *Id.* at 248.

[37] *Id.* at 249.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 7 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 7 of 30

## a. Employment Discrimination Claims

Because Ms. Holladay is self-represented, the Court construes her Complaint liberally. The Court discerns four distinct employment discrimination–related claims in the Complaint. First, Ms. Holladay claims that she was retaliated against—in the form of increased and demeaning supervision and negative personnel evaluations from 2011 until "late April 2013"—for her participation in a workplace investigation.[38] Second, Ms. Holladay alleges that in the summer of 2012 she was not hired into the ABEL program because of her age.[39] Third, she claims she was subjected to a hostile work environment on account of her disability during some period between September 2011 and late April 2013.[40] And fourth, she claims that she was terminated or forced to resign in November 2013 because of her disability.[41]

The District raises two arguments that it contends entitle it to judgment as a matter of law on each of these claims. First, the District contends the claims are untimely.[42] Second, the District contends that each claim fails on the merits.

### 1. Timeliness

Title VII of the Civil Rights Act of 1964 provides that "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted

---

[38] Docket 1 at 3–4.

[39] Docket 1 at 6.

[40] Docket 1 at 3–6.

[41] Docket 1 at 7.

[42] *See* Docket 31 at 5. The District contends the FMLA claim is also untimely for the same reason; that claim is addressed separately below.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 8 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 8 of 30

proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."[43]  The federal regulation implementing that statutory section provides that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."[44]  Once a charge has been filed, it "may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein."[45]  And "[s]uch amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."[46]  These provisions governing timeliness of Title VII claims also extend to claims under the ADA and the ADEA.[47]

---

[43] 42 U.S.C. § 2005e-5(e)(1).  The District does not contest that the 300-day period applies.  *See* Docket 31 at 7 (arguing that the complaint was filed "well after the 300-day period within which Ms. Holladay was required to file").  By regulation, a filing within 300 days is deemed timely even without the complainant having first filed with the state agency if the state agency has waived its right to exclusive processing of the charge.  *See* 29 C.F.R. § 1601.13(a)(4)(ii).  Alaska is such a state.  *See* EEOC, San Francisco District Office, *Timeliness*, https://www.eeoc.gov/field/sanfrancisco/timeliness.cfm.

[44] 29 C.F.R. § 1601.12(b).

[45] 29 C.F.R. § 1601.12(b).

[46] 29 C.F.R. § 1601.12(b).

[47] *See* 42 U.S.C. § 12117(a) (extending Title VII remedies to disability discrimination); 29 U.S.C. § 626(d) (detailing the limitations period for an age discrimination action).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 9 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 9 of 30

Ms. Holladay asserts that she first filed her complaint with the EEOC on August 29, 2014, and the District accepts that as the relevant date for the purposes of its summary judgment motion.[48]  Thus, Ms. Holladay can bring claims only for actions that occurred on or after November 2, 2013.[49]  There are two basic types of employment claims: hostile environment claims and discrete-action claims.  Hostile environment claims by their nature involve continuing conduct, and thus under the "continuing violation" doctrine that applies to hostile environment claims, conduct prior to the 300-day period may be actionable if the conduct also extended into the filing period.[50]  But discrete discriminatory acts "such as termination, failure to promote, denial of transfer, or refusal to hire"—which comprise many of Ms. Holladay's claims—"are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[51]

Ms. Holladay was first laid off in July 2012, and was not selected for hire into the ABEL program in August 2012.  Any claims related to these discrete acts—including Ms. Holladay's claim that she was not hired into the ABEL program because of her age—are well outside the 300-day period and are time barred.  Ms. Holladay also asserts a retaliation claim, but Ms. Holladay does *not* assert that her termination (or resignation) in

---

[48] *See, e.g.*, Docket 31 at 7 ("She did not file with the EEOC until August 29, 2014 (at the earliest).").  *But see* Docket 31 at 4 & n.5 (disputing whether it was actually filed on that date).  As noted above, the initial fax appears to have been sent on August 29, 2014.  *See supra* note 27.

[49] The District suggests that the Court should use the date Ms. Holladay amended her EEOC claim—November 13, 2014—to determine the timeliness of this claim.  *See* Docket 31 at 7.  But as explained above, amendments relate back to the original filing.

[50] *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1192 (9th Cir. 2003).

[51] *Morgan*, 536 U.S. at 113–14.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 10 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 10 of 30

November 2013 was itself in retaliation for any involvement in a protected activity. Rather, her retaliation claim is apparently limited to Ms. Nugent's conduct—more specifically, Ms. Nugent's negative evaluations of Ms. Holladay and Ms. Nugent's increased supervision of Ms. Holladay's work—up to "late April 2013."[52] Because all this conduct took place outside the 300-day limitations period, the retaliation claim is also time barred.

Ms. Holladay's filings indicate she is also pursuing a hostile environment claim based on her treatment while in the AO program and under the supervision of Ms. Nugent. Assuming—solely for the purposes of assessing timeliness—that the alleged conduct constituted a hostile environment claim,[53] Ms. Holladay apparently left that environment by August 23, 2013 at the latest, and any such claim therefore is also time barred.

But Ms. Holladay's actual termination or resignation in November 2013, and the meeting discussing reasonable accommodations, were within the 300 day period.[54]

---

[52] *See* Docket 1 at 3–6.

[53] A hostile work environment claim requires that the allegedly hostile conduct be related to a "protected characteristic" of the plaintiff, such as the plaintiff's age, race, or sex. *See, e.g.*, *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 847 (9th Cir. 2002); *see also* 29 U.S.C. § 623 (prohibiting age discrimination); 42 U.S.C. § 2000e-2(m) (identifying protected characteristics under Title VII); 42 U.S.C. § 12112 (prohibiting discrimination based on disability). Although Ms. Holladay alleges that some employees were treated differently than her, she does not allege abusive conduct related to any protected characteristic. *Cf. Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (explaining that a hostile work environment predicated on sex discrimination requires a plaintiff to show he or she "was subjected to verbal or physical conduct *of a sexual nature*" (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)) (emphasis added)).

[54] The "termination meeting" took place on November 4, 2013, although Ms. Holladay did not "resign" until November 8, 2013. *See* Docket 32-20 (Nov. 18, 2013 letter from Traci Gatewood to Jamie Holladay). Either date is within the 300-day period; and even if Ms. Holladay was not formally terminated, but chose to resign, removing her from her from one position and transferring her to an apparently less desirable one would itself be a "tangible employment action" necessary to sustain a discrimination suit. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 11 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 11 of 30

According to Ms. Holladay, she was told that she was terminated "because of the accommodations" she was seeking under the ADA.[55] This is an allegation of disability discrimination that occurred within the 300-day period.[56]

The record is somewhat unclear as to whether Ms. Holladay was "fired" or "resigned" in November 2013. But even assuming that Ms. Holladay resigned, Ms. Holladay alleges that she did so and that she declined the alternative job options because the District did not offer "a solution to remove or even attempt to address the circumstances which support the hostile work environment."[57] "A claim of constructive discharge . . . has two basic elements. A plaintiff must prove first that [she] was discriminated against by his employer to the point where a reasonable person in [her] position would have felt compelled to resign. . . . [and] [she] must also show that [she] actually resigned."[58] Such a claim accrues when the employee notifies her employer that

---

[55] Docket 1 at 7; *see also* Docket 32-18 (Oct. 18, 2013 letter from Mikki King Barker to Traci Gatewood); Docket 32-19 (Nov. 6, 2013 letter from Trace Gatewood to Jamie Holladay).

[56] *See Dark v. Curry Cnty.*, 451 F.3d 1078, 1088 ("The ADA's definition of discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . .'" (quoting 42 U.S.C. § 12112(b)(5)(A))).

[57] Docket 1-2 at 25 (Nov. 8, 2013 email from Jamie Holladay to Sandra Kowalski).

[58] *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). To prevail on the discrimination element of her constructive discharge claim, Ms. Holladay must meet the same requirements that attach to an independent hostile work environment claim. *See also Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004). Thus, the same evidence which might support her time-barred hostile environment claim would also be relevant to the constructive discharge claim. That this is so does not revive the independent hostile work environment claim. *Cf. Green*, 136 S. Ct. at 1777–78 (comparing the two types of claims). If Ms. Holladay prevails, she can recover only those damages flowing from her constructive discharge, and cannot recover damages related solely to the alleged hostile work environment prior to November 2013.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 12 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 12 of 30

she intends to resign.[59]  Since Ms. Holladay gave notice on November 8, 2013, within the 300-dayu limitation period, she has asserted a timely constructive discharge claim.

In light of the foregoing, the Court will grant summary judgment in favor of Defendant as to Ms. Holladay's hostile work environment claim, retaliation claim, ADEA claim, and any other claims she intended to assert with regard to the District's decision not to hire her into the new ABEL program because those claims are time-barred.  The Court will not grant summary judgment to the District on timeliness grounds as to Ms. Holladay's claims of wrongful termination or constructive discharge in November 2013 because the discrete employment actions related to those claims occurred within the applicable 300-day period.

### 2.    Merits

The District argues that, even if timely, each of Ms. Holladay's discrimination claims fails on the merits.  Ms. Holladay advances two theories supporting timely discrimination claims[60]: First, she maintains that she was denied reasonable accommodation and then fired "because of" her disability; and second, she asserts that she was constructively discharged because of disability discrimination "by [her] employer

---

[59] *Green*, 136 S. Ct. at 1782.

[60] *See* Docket 1 at 7 (asserting that Ms. Holladay was fired "because of her accommodations" and that she rejected reassignment because it would not address "ongoing harassment, retaliation and discrimination").  The Court has already noted that the age discrimination, retaliation, and hostile environment claims are untimely, and therefore the Court does not address the merits of those claims.  The Court will address the FMLA claim (as it is not a discrimination claim), the defamation claim, and the contract claims separately below.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 13 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 13 of 30

to the point where a reasonable person in [her] position would have felt compelled to resign."[61]

The District addresses the merits only as to the reasonable accommodations claim. "The ADA prohibits an employer from discriminating against a qualified individual with a disability 'because of the disability.'"[62] An ADA claim entails three elements: (1) that the plaintiff was disabled; (2) that the plaintiff was a qualified individual; and (3) that the defendant discriminated against plaintiff "because of the disability." "The ADA's definition of discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . .'"[63] The District does not challenge, at this stage, that Ms. Holladay had a disability.[64] Nor does the District challenge (or even address) the requirement that Ms.

---

[61] *Green*, 136 S. Ct. at 1777.

[62] *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)).

[63] *Dark*, 451 F.3d at 1088 (quoting 42 U.S.C. § 12112(b)(5)(A)). A defendant-employer may defeat such a claim if it "demonstrate[s] that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). The District has not made such a showing here.

[64] *See* Docket 31 at 10. The District nonetheless asserts in its briefing that Ms. Holladay "claimed she was not disabled," but in context the record suggests that Ms. Holladay was decoupling her disability from a separate request to reopen her grievances. *See* Docket 32-1 at 20, 89:14–17; *see also* Docket 32-19 ("During the meeting you indicated you were not disabled, but you also stated that your current disability would not exist had you prevailed in past complaints/grievances filed against the District."). Drawing all inferences in Ms. Holladay's favor, the Court cannot find that she was disclaiming a disability. The Court accordingly makes no ruling as to this element, but notes that Ms. Holladay has been formally diagnosed with Post-traumatic Stress Disorder, Attention Deficit Disorder, and Generalized Anxiety Disorder. *See* Docket 32-18 at 2.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 14 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 14 of 30

Holladay be a qualified individual.[65]  Rather, the District focuses on whether it discriminated against Ms. Holladay by refusing to make reasonable accommodations.

In the District's view, Ms. Holladay's accommodation claim fails because "she claimed that in order for her to continue working, defendant was required to re-open the various grievances which she had filed and to resolve them in the manner desired by plaintiff."[66]  But Ms. Holladay specifically testified that although she "asked for that to happen," she "didn't ask for it to be an accommodation."[67]  One accommodation that Ms. Holladay did seek was that she not be assigned to work with "profane or deliberately disruptive students."[68]

Ms. Holladay has the burden of showing the existence of a reasonable accommodation.  But "[t]o avoid summary judgment," Ms. Holladay "need only show that an accommodation seems reasonable on its face, i.e., ordinarily or in the run of cases."[69]  Ms. Holladay's request that she not be assigned to profane or deliberately disruptive students seems reasonable on its face, and the District does not now suggest

---

[65] *See* Docket 31 at 10–11.  A "qualified individual" is an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

[66] Docket 31 at 10.

[67] Docket 32-1 at 21, 90:16–17.

[68] Docket 32-18 (Oct. 7, 2013 letter from Mikki King Barker to Traci Gatewood).  Ms. Holladay also sought a temporary limitation to part-time work.  The District recognized this letter as a request for accommodation.  *See* Docket 32-19 at 1 ("[Y]ou provided a request for an accommodation supported by medical opinion from your doctor.").

[69] *Dark*, 451 F.3d at 1088 (quoting *U.S. Airways v. Barnett*, 535 U.S. 391, 401–02 (2002)).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 15 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 15 of 30

otherwise.[70] And yet the District apparently rejected this request at the November 4, 2013 termination meeting, telling Ms. Holladay in the November 6 letter that she "did not offer any reasonable accommodations that would allow [her] to do [her] job."[71]

Under the ADA, however, "[a]n employer is not obligated to provide an employee the accommodation [she] requests or prefers, the employer need only provide some reasonable accommodation."[72] The District asserts that it "offered several possible accommodations to plaintiff" but the record reveals only two: reassignment to a part-time secretarial position or reassignment to a janitorial position.[73] But "[i]n general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship."[74] The record contains no evidence suggesting that Ms. Holladay's proffered accommodation—assignment to a student that was not "profane or deliberately disruptive"—would constitute an undue hardship to the District. To the contrary, the only evidence on this matter is Ms. Holladay's testimony that it was feasible.[75] The Court cannot conclude, on this record, that as a matter of law the

---

[70] *See* Docket 32-1 at 23–24, 128:22–129:18 (discussing the feasibility of this accommodation).

[71] Docket 32-19 at 1.

[72] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting *E.E.O.C. v. Yellow Freight Sys. Inc.*, 253 F.3d 943, 951 (7th Cir.2001) (en banc)).

[73] *See* Docker 32-19 at 1.

[74] Appendix to 29 C.F.R 1630, Interpretive Guidance on Title I of the ADA, *available at* https://www.law.cornell.edu/cfr/text/29/appendix-to_part_1630; *see also Austin v. Wal-Mart Stores, Inc.*, 2008 WL 4936480 at *9 (D. Or. Nov. 14, 2008).

[75] Docket 32-1 at 23–24, 128:22–129:18.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 16 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 16 of 30

District offered a reasonable accommodation or that Ms. Holladay did not present a reasonable accommodation that the District could have provided.

The District "bore an affirmative obligation to engage in an interactive process," and summary judgment is unavailable unless the undisputed facts show the employer engaged in that process in good faith.[76] The only evidence before the Court on this process is the unsworn letter from the District's human resources director that asserts, with little elaboration, that "all parties agreed that no reasonable accommodation could be made."[77] The District asserts that an employer is absolved of its duty to engage if the employee fails to engage in the process or "terminates" it "by voluntarily resigning."[78] But after setting forth these propositions of law, the District does not then demonstrate that they apply here. And the record—as it now stands—does not support their application: Ms. Holladay "resigned" on November 8, 2013, but the District's own records indicate that the interactive process had concluded at the November 4, 2013 meeting.[79] And because the current record as to that meeting is so sparse, the Court cannot conclude as a matter of law that the interactive process was undertaken in good faith.

---

[76] *Dark*, 451 F.3d at 1088 (citing *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256 (9th Cir. 2001), *overruled on other grounds by Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007)).

[77] Docket 32-19 at 1.

[78] *See* Docket 31 at 11 (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011); *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130 (7th Cir. 1996); and *Templeton v. Neodata Servs. Inc.*, 162 F.3d 617 (10th Cir. 1998)).

[79] *See* Docket 32-19 at 1 ("As a result of that [November 4, 2013] conversation, all parties agreed that no reasonable accommodation could be made to continue your employment in the Special Education Extended Resource Aide position.").

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 17 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 17 of 30

The Court will therefore deny summary judgment as to Ms. Holladay's ADA accommodations claim and the ADA constructive discharge claim.[80]

---

[80] The District has not meaningfully addressed the merits of Ms. Holladay's constructive discharge claim. *See* Docket 31 at 4 (identifying this claim); Docket 31 at 10 (discussing Ms. Holladay's resignation as a termination of the interactive process). As explained above, a constructive discharge claim under the ADA requires demonstrating both discrimination and that this discrimination caused the employee's resignation. *See supra* page 12. The discrimination must be "to the point where a reasonable person in his position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). As also noted above, the discrimination must be related to a "protected characteristic" of the plaintiff. *See supra* note 53. Here, then, Ms. Holladay must show that she resigned because she was discriminated against with regard to her disabled status to the point where a hypothetical reasonable person would feel compelled to resign.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 18 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 18 of 30

### b. Defamation Claim

Ms. Holladay claims that she was defamed by certain District employees.[81]  This claim arises from statements made during evaluation meetings in March and April of 2012.[82]  The District contends that these statements were privileged and not "published," and in any event are time barred.

The statute of limitations for a defamation claim is two years.[83]  This lawsuit was filed in May 2015—more than three years after the comments allegedly were made.  The defamation claims are thus time barred and the District is entitled to summary judgment as to those claims.  Accordingly, the Court does not reach the issues of privilege or publication.

### c. FMLA Claim

Ms. Holladay claims that she was denied benefits to which she had an entitlement under the FMLA.[84]  The District suggests that this claim is time barred for the same reasons as Ms. Holladay's discrimination claims (that is, that they fall outside the 300-day limitation period).[85]  But FMLA claims are not subject to the 300-day period that governs employment discrimination claims.  Indeed, under the separate statutory and regulatory

---

[81] *See* Docket 1 at 2, ¶ 3(c)(xii).

[82] *See* Docket 32-19 at 5–6; Docket 32-1 at 15–19, 79:1–83:23.

[83] *See MacDonald v. Riggs*, 166 P.3d 12, 17 & n.9 (Alaska 2007) (citing AS 09.010.070).

[84] *See* Docket 1 at 7.  Ms. Holladay also alleges that she was denied benefits protected by the Alaska Family Leave Act (AFLA).  AS 39.20.500–.550.  The Alaska statute provides no judicial remedy for violations.  *See Municipality of Anchorage v. Gregg*, 101 P.3d 181, 186 n.6 (Alaska 2004) (citing AS 39.20.540).  Ms. Holladay cannot pursue a claim under AFLA in this forum, and the Court accordingly does not discuss her eligibility for benefits under that statute.

[85] *See* Docket 31 at 8.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 19 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 19 of 30

structure of the FMLA, an employee "has the choice" between filing a complaint with the Department of Labor (not the EEOC) *or* filing a private lawsuit.[86] And, as relevant here, "an action may be brought under [the FMLA] not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."[87] Ms. Holladay sought (and was denied) FMLA leave no earlier than August 23, 2013. She filed this suit May 7, 2015. Accordingly, Ms. Holladay's FMLA claim is timely.

On the merits, the District contends that the undisputed facts show that Ms. Holladay was not qualified for benefits under the FMLA, and that the District is therefore entitled to summary judgment on that claim even if it is timely.[88] FMLA benefits are available only to "eligible employees."[89] An employee is eligible if she has been employed "for at least 12 months" by the employer and has worked "at least 1250 hours of service with such employer during the previous 12-month period."[90]

Ms. Holladay sought leave under the FMLA on August 28, 2013.[91] The District asserts that Ms. Holladay did not work 1,250 hours in the preceding 12 months (that is, between August 29, 2012 and August 28, 2013). In support of this position, the District

[86] 29 C.F.R. § 825.400(a).

[87] 29 U.S.C. § 2617(c)(1).

[88] *See* Docket 31 at 9–10.

[89] *See* 29 U.S.C. § 2613 ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period.").

[90] 29 U.S.C. § 2611(2)(A). There are different eligibility rules—not applicable here—for certain types of employees, *see* 29 U.S.C. § 2611(2)(D), and different rules for calculating the benefit for certain school employees once eligibility is established, *see* 29 U.S.C. § 2618.

[91] *See* Docket 32-16 (June 4, 2015 letter from Joe Dunham, Statewide Supervising Investigator, Alaska Wage and Hour Administration to Jamie Holladay) at 2.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 20 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 20 of 30

relies on its letter to the state agency investigating Ms. Holladay's AFLA claim. During that period, Ms. Holladay worked from December 19, 2012 until some date in June 2013, and again for a few days in August, 2013.[92] The District claims that "School District payroll records reflect that during that 12-month period, Ms. Holladay worked only 805 hours."[93] This is indeed short of the 1,250-hour requirement for FMLA benefits. But Ms. Holladay contends that the payroll logs do not account for additional time she worked each day.[94] She contends that she worked through lunch and other scheduled breaks and stayed after hours to accommodate her increased workload from being assigned to work with two students.[95]

Ms. Holladay does not quantify this time, but the Court reasonably infers that she asserts her total hours to exceed 1,250. The Court is thus faced with Ms. Holladay's sworn assertion that she worked more than 1,250 hours and the District's assertion—in the letter justifying denial of benefits—that its records reflect she worked less than 1,250 hours.[96] That calculation appears to be based on Ms. Holladay's compensation, but "[t]he determination [of hours worked] is not limited by methods of recordkeeping, or by compensation agreements that do not accurately reflect all of the hours an employee has

---

[92] *See* Docket 32-16 at 2. Ms. Holladay was in a lay-off status until recalled in December 2012. *See* Docket 32-6 (Dec. 19, 2012 Recall Notice).

[93] Docket 31 at 9.

[94] *See* Docket 32-21 (Pl.'s Resp. to Def.'s First Disc. Requests) at 4.

[95] Docket 32-21 at 4–5.

[96] The District did not submit the payroll records themselves, or even a declaration or affidavit attesting to their contents, but rather relies on its subsequent unsworn letter—itself purportedly based on payroll records—submitted to the state agency. *See* Docket 32-17 (Jan. 27, 2015 letter from Traci Gatewood to Joe Dunham) at 2–3.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 21 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 21 of 30

worked for or been in service to the employer."[97]  Rather, "[a]ny accurate accounting of actual hours worked under FLSA's principles may be used."[98]  Given the dispute as to the number of hours actually worked, the Court cannot conclude as a matter of law that Ms. Holladay was not entitled to FMLA benefits and therefore will not grant summary judgment on this claim.[99]

Moreover, Ms. Holladay's claim is more nuanced than a straightforward denial of FMLA benefits.  She also asserts that the District interfered with her right to *pursue* those benefits by demanding that she sign a medical release form before she could obtain FMLA benefits (if she were eligible).[100]  The FMLA expressly prohibits any employer from interfering or restraining "the attempt to exercise[] any right" provided under the FMLA.[101]  As neither party has briefed the substance of this claim, the Court will make no decision as to its merits at this juncture.

### d.   Contractual Claims and Grievance Procedures

The District classifies Ms. Holladay's remaining claims as "grievances" subject to the exhaustion of remedies doctrine.[102]  These claims are wide-ranging, covering, for

---

[97] 29 C.F.R. § 825.110(c)(1).

[98] *Id.*

[99] *Cf. Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 142–43 (2d Cir. 2012) (reversing a grant of summary judgment to defendant premised on an hours calculation derived from a collective bargaining agreement when the plaintiff—a high school teacher—averred that he worked an additional 1.5 unpaid hours each day).

[100] *See* Docket 1 at 7; Docket 32-21 at 11.

[101] 29 U.S.C. § 2615(a)(1).

[102] *See* Docket 31 at 13–15.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 22 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 22 of 30

example "[r]eassigning [Ms. Holladay] to non essential duties," "[i]ncreased surveillance," "[d]enial of training opportunities," and "[f]ailure to investigate witnesses in complaints/grievances."[103]

Under the exhaustion doctrine, "employees must first exhaust their contractual or administrative remedies, or show that they are excused from doing so, before they may pursue direct judicial actions against their employers."[104] The District asserts that Ms. Holladay's grievance claims must be dismissed because Ms. Holladay did not bring her grievances to binding arbitration, the third (and final) step in the grievance process.[105]

At the outset, the Court notes that the contractual grievance process applies only to "a claim by a grievant that a dispute or disagreement exists involving interpretation or application of the terms of this Agreement."[106] The doctrine's application in this case is therefore limited to Ms. Holladay's contractual claims arising from the collective bargaining agreement; it does not apply to Ms. Holladay's claims arising under federal law or Alaska law.[107]

The agreement provides that, after completion of the second step in the grievance process, "the ESSA or the District may, upon written notification to the other party, submit

---

[103] Docket 1 at 2, ¶ 3(c)(ii), (vi), (x), & (xv).

[104] *State v. Beard* (*Beard III*), 960 P.2d 1, 5 (Alaska 1998); *see also Beard v. Baum* (*Beard I*), 796 P.2d 1344, 1348 (Alaska 1990) (quoting *Casey v. City of Fairbanks*, 670 P.2d 1133, 1136 (Alaska 1983)).

[105] *See* Docket 32-3 (Collective Bargaining Agreement) at 12, ¶ 5.4(d).

[106] Docket 32-3 at 11, ¶ 5.1(b).

[107] *Cf. Beard I*, 796 P.2d at 1349 n.3 (contrasting the expansive "any controversy or dispute" with those that "involve[] the application or interpretation of the terms of this agreement" (alteration in original)).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 23 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 23 of 30

the grievance to arbitration." There is no question that the disputes between Ms. Holladay and the District did not advance to arbitration, and no suggestion that any written notification was given. But Ms. Holladay contends that under the contract's terms, arbitration was not actually required and was not actually available to her.[108]

Ms. Holladay's first argument is premised on the use of the word "may" in the arbitration provision. The Court is not persuaded that arbitration was "optional" in the manner that Ms. Holladay suggests. The word "may" does not mean that a party could skip arbitration entirely and immediately seek judicial relief. Such a reading would abrogate the exhaustion doctrine, as each step of the grievance process is similarly optional. Rather, "may" means that a party "may" pursue the next step in the process if that party is dissatisfied with the resolution at the previous step.[109] Under the terms of the contract, "[a]ny grievance not advanced from one step to the next within the time limits of that step shall be deemed resolved by the answer at the previous step."[110]

Ms. Holladay's second argument is more persuasive. Ms. Holladay contends that the phrasing of the third step suggests that the right to pursue arbitration belongs only to the District and the ESSA, and not to an individual employee. Accordingly, Ms. Holladay maintains that she is excused from failing to seek arbitration because she had no right to do so. This interpretation of her rights is consistent with the language of the provision in

---

[108] *See* Docket 40 (Opp.) at 4,

[109] *See* Docket 32-3 at 12 (using "may" for each of the three steps).

[110] Docket 32-3 at 11, ¶ 5.2(c).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 24 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 24 of 30

isolation: "[T]he ESSA or the District may . . . submit the grievance to arbitration."[111]  An individual employee, such as Ms. Holladay, is not explicitly given a right to pursue arbitration.

This reading is also buttressed by examining related terms of the contract.  For the first and second step of the process, different language is used.  Thus, "the grievant" may submit a written grievance to a supervisor, just as "the grievant" may submit a written grievant to the Superintendent.[112]  And the term "grievant" is expressly defined by the contract to include "an employee or group of employees or the ESSA filing a grievance."[113]  When two provisions of a contract use different terms, those terms are presumed to have different meanings; and when a contract uses one specific word it generally excludes others.[114]  The contract gives the individual employee *and* the ESSA the right to pursue relief at steps one and two, but as to the third step provides that right only to the ESSA (and the District).  Based on the foregoing, the contract does not permit Ms. Holladay to unilaterally seek arbitration.[115]

---

[111] Docket 32-3 at 12.

[112] *See* Docket 32-3 at 12, ¶ 5.4(b)(1), 5.4(c)(1).

[113] Docket 32-2 at 11, ¶ 5.1(a).

[114] *Cf. Mahan v. Mahan*, 347 P.3d 91, 95 (Alaska 2015) (discussing interpretive principle of *expressio unius est exclusio alterius*—the expression of one is the exclusion of the other).

[115] The text of the contract, as the most persuasive evidence of the parties' intent, resolves this issue.  But the Court also notes that this arrangement makes eminent sense: according to the contract, the costs of arbitration are to be "borne equally" by the ESSA and the District.  *See* Docket 32-3 at 12, ¶ 5.4(d)(5).  Thus, the contract provides that the parties that would bear the costs of arbitration retain control whether to invoke it.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 25 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 25 of 30

But that Ms. Holladay's reading of the contract is correct does resolve the matter. In *Casey v. City of Fairbanks*, the seminal Alaska Supreme Court case on the exhaustion doctrine, the employee contended that he was excused from the exhaustion requirement "when the Union failed to pursue his grievance, because the Working Agreement did not contain any measures by which an aggrieved employee could ensure enforcement of the grievance procedure."[116] There, the Alaska Supreme Court did not conclude that the employee was automatically excused from exhausting contractual remedies. Rather, the Alaska Supreme Court held that he was excused only because he had "made a good faith effort" to fully exhaust his contractual remedies by raising his concerns with several union representatives, each of whom told him that the union could not help him.[117]

The Alaska Supreme Court reinforced this requirement—that an employee dependent on a union to represent him in grievance procedures make a good faith effort to get the union to do so—in a series of opinions, the last of which is titled *Alaska v. Beard*.[118] There, as here, the governing agreement provided for arbitration as the final step in the grievance process and reserved the decision to pursue it to the union.[119] In the first *Beard* appeal, the Alaska Supreme Court reversed the trial court's ruling on summary judgment that Beard, the employee, had failed to exhaust his administrative

---

[116] *Casey*, 670 P.2d at 1135. That agreement gave the employee the right to pursue only the first step of a five-step process. *See id.* at 1135 n.1.

[117] *See Casey*, 670 P.2d at 1136–37.

[118] *Beard III*, 960 P.2d 1; *see also Cameron v. Beard* (*Beard II*), 864 P.2d 538 (Alaska 1993); *Beard I*, 796 P.2d 1344.

[119] *See Beard III*, 960 P.2d at 8 (explaining five-step process); *Beard I*, 796 P.2d at 1249 (explaining union's role in process).

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 26 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 26 of 30

remedies. The Supreme Court noted that "[u]nder the terms of the CBA grievance procedures, Beard could not pursue his grievance past the initial steps without the cooperation of [a union] representative." Viewing the facts in the light most favorable to Beard, as the nonmovant, the Court concluded that "Beard could not comply" with the grievance procedures "because his union representative refused to represent him."[120]

Beard II clarified that Beard I had not definitively resolved the issue of exhaustion in Beard's favor, but had instead turned on the presumption that favored Beard in his opposition to summary judgment.[121] On the second remand, the trial court concluded that the union knew of Beard's grievances but did not pursue them, and that Beard was thus excused for his failure to exhaust administrative remedies.[122] But on the third appeal, the Alaska Supreme Court reversed. It concluded that while the union had refused to file some grievances, Beard had never asked it to pursue the constructive discharge grievance at issue and the union representative had testified that he would have pursued it if asked.[123] As the Supreme Court explained, "the union must be afforded a reasonable opportunity to represent the employee" before the employee's failure to exhaust contractual remedies can be excused.[124]

---

[120] Beard I, 796 P.2d at 1249.

[121] See Beard II, 864 P.2d at 545 ("The superior court erroneously interpreted our decision in Beard I as conclusively deciding the exhaustion issue.").

[122] See Beard III, 960 P.2d at 6 (describing the superior court's ruling).

[123] Beard III, 960 P.2d at 7 (describing evidence).

[124] Beard III, 960 P.2d at 7.

Case No. 4:15-cv-00011-SLG, Holladay v. Fairbanks North Star Borough School Dist.
Order re Motion for Summary Judgment
Page 27 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 27 of 30

Thus, in order to avoid the requirements of exhaustion, Ms. Holladay must have made a good faith effort to have the union pursue her grievances through arbitration. The District asserts that "plaintiff fails to provide evidence that she sought to have either her union or the defendant initiate arbitration or that either her union or the defendant denied any such request" and that it is not "aware of any such evidence."[125] Ms. Holladay— representing herself and perhaps unfamiliar with the contours of Alaska's exhaustion doctrine—has not explicitly addressed whether, how, or when she asked her union to pursue arbitration. But her testimony indicates that she "went to ESSA probably four or five different times . . . to present my complaint to get the grievance process started" and that she "was following their instructions."[126] She testified that the union knew she "wanted to file a grievance, and that they were preparing to file a grievance" but that "then it didn't happen."[127] Ms. Holladay was "starting to push" the union, but "could not get them to move."[128] Because she felt she "was being obstructed [] from filing [her] grievance," she met with a lawyer who told her she had to exhaust her contractual rights first.[129] She also claims that, at one point, the union informed her that it would no longer represent her in her grievances.[130]

---

[125] Docket 43 at 3.

[126] Docket 32-1 (Holladay Dep.) at 11, 41:14–18.

[127] Docket 32-1 at 11, 41:21–23.

[128] Docket 32-1 at 11–12, 41:25–42:2.

[129] Docket 32-1 at 12, 42:7–8.

[130] *See* Docket 1 at 5 ("[T]he union notified me they were ending representation of me for my grievance . . . .").

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 28 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 28 of 30

Given this record with regard to Ms. Holladay's interactions with the union, the Court cannot conclude as a matter of law that Ms. Holladay failed to pursue her contractual remedies in good faith. Like the Supreme Court in *Beard I*, the Court does not conclude that Ms. Holladay is in fact excused for her failure to seek arbitration. Rather, the Court concludes only that in light of the current record before it, and drawing all reasonable inferences in Ms. Holladay's favor as the nonmovant, the District is not entitled to summary judgment on the grounds of nonexhaustion—at least as to grievances for which Ms. Holladay pursued the first and second step of the grievance process. As the District has not advanced any other argument in favor of dismissing any contractual claim Ms. Holladay intends to assert, summary judgment as to such claims will be denied.

## CONCLUSION

Defendant's Motion for Summary Judgment at Docket 31 is GRANTED IN PART and DENIED IN PART, as outlined below.

Summary judgment is granted in favor of Defendant as to the following claims:

- Plaintiff's ADEA claim and all other employment discrimination claims arising from Plaintiff's termination from the AO program and Defendant's subsequent failure to hire Plaintiff into the ABEL program in the summer of 2012;

- Plaintiff's retaliation claim;

- Plaintiff's hostile work environment claim;

- Plaintiff's defamation claims; and

- Plaintiff's AFLA claim.

Summary judgment is denied as to the following claims:

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 29 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 29 of 30

- Plaintiff's ADA constructive discharge claim related to the November 2013 termination or resignation;

- Plaintiff's ADA reasonable accommodations claim related to the November 2013 termination or resignation;

- Plaintiff's FMLA claims; and

- Plaintiff's contractual "grievance" claims.

IT IS FURTHER ORDERED that a telephonic hearing to schedule trial is set for **Friday, July 21, 2017 at 2:30 p.m.**[131] Telephonic participants are directed to call (907) 677-6248 five minutes before the start of the hearing. When prompted, please enter the following access code: **668160**.

DATED this 7th day of July, 2017 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[131] The Court offers the following additional observation: This case concerns matters by now long past. On the one side is an employee troubled and sincerely affected by what she apparently perceived to be a toxic work environment (whether such characterization is accurate is beside the point). On the other side is a government entity. If the parties have not yet attempted mediation, the Court strongly urges them to consider it. From the Court's admittedly limited perspective, a mutual and good-faith attempt at a settled disposition of this case would likely advance both parties' interests.

Case No. 4:15-cv-00011-SLG, *Holladay v. Fairbanks North Star Borough School Dist.*
Order re Motion for Summary Judgment
Page 30 of 30

Case 4:15-cv-00011-SLG   Document 49   Filed 07/07/17   Page 30 of 30